# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW PERRONG, individually and on behalf of a class of all persons and entities similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> MEDICAL GUARDIAN LLC, MLA INTERNATIONAL, INC., and JOE AYALA, <br><br> Defendant. | Case No. 2:19-cv-02371-AB <br><br> CLASS ACTION COMPLAINT |

## FIRST AMENDED CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Andrew Perrong ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Medical Guardian LLC ("Medical Guardian") commissioned a series of prerecorded telemarketing calls to Mr. Perrong's residential telephone number, which is charged per call, in violation of the TCPA.

3. Mr. Perrong's prerecorded calls were made to him pursuant to an arrangement between Medical Guardian and MLA International, Inc. ("MLA International"), a vendor for Medical Guardian, who telemarketed Medical Guardian's services at Medical Guardian's direction.

4. MLA International is owned and operated by Joe Ayala.

5. The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

6. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

7. Plaintiff Andrew Perrong is a Pennsylvania resident, and a resident of this district.

8. Defendant Medical Guardian LLC is a Pennsylvania limited liability company with its principal place of business in Philadelphia, Pennsylvania and is also a resident of this district. Medical Guardian's registered address is 1500 Locust Street, Suite 4310, Philadelphia, Pennsylvania 19102.

9. Defendant MLA International, Inc. is a Florida corporation with its principal place of business at 142 Wilshire Blvd., Casselberry, Florida 32707. MLA International directs its telemarketing activity into this district, as it did with the Plaintiff.

10. Defendant Joe Ayala is a Florida individual located at 142 Wilshire Blvd., Casselberry, Florida 32707. Mr. Ayala has engaged in telemarketing activity into this district, as he did with the Plaintiff.

## Jurisdiction & Venue

11. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

12. The Defendants regularly engage in business in this district, including making telemarketing calls into this district and soliciting business into this district. Furthermore, Medical Guardian provides Pennsylvania residents with services in this district, is incorporated in this district, and has offices in this district.

13. Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant Medical Guardian resides in this district.

### The Telephone Consumer Protection Act

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

15. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call." See 47 U.S.C. § 227(b)(1)(A)(iii).

16. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

17. The TCPA also makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." See 47 U.S.C. § 227(b)(1)(B).

18. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

19. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers, services for which the called party is charged for the call, and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>The TCPA Requires Telemarketers to Identify Themselves</u>

20. The TCPA's implementing regulations prohibit any company from initiating any telemarketing call unless the company has implemented internal procedures for maintaining a list of persons who request not to be called by the entity. 47 C.F.R. 64.1200(d). Such internal procedures must meet certain minimum requirements to allow the entity to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

21. This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the

4

name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. 64.1200(d)(4).

The Growing Problem of Automated Telemarketing

22. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

23. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

24. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

25. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J.

5

(July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

26. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

27. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited May 3, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

28. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited May 3, 2019).

## Factual Allegations

29. Defendant Medical Guardian offers medical alert systems.

30. To generate new clients, Medical Guardian relies on telemarketing.

31. One of the telemarketing strategies used by Defendants involves the use of automated and pre-recorded calls to solicit potential customers.

32. However, Medical Guardian relies on the conduct of third parties, such as MLA International and Mr. Ayala, to automatically dial the telemarketing calls and to initiate the sales pitch.

The Calls to Mr. Perrong

33. Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

34. Plaintiff's telephone number is (215) 322-XXXX.

6

35. Plaintiff is charged for each call placed to that number.

36. That number is on the National Do Not Call Registry.

37. That number is used for residential purposes only.

38. Medical Guardian placed calls to the Plaintiff on at least 26 occasions between January 10, 2019 and May 20, 2019.

39. A prerecorded message was then played:

Hello. Press 1 Now. The first 100 callers will receive $2,000 in grocery coupons. If you're over the age of 55 and have had a slip and fall in the past 12 months, press 1 now to receive a medical alert device valued at $400 at no cost to you for the equipment. Press 1 now to receive your medical alert device and $2,000 in grocery coupons or press 3 to be removed from the marketing list. Again, press 1 now to receive your medical alert device and $2,000 in grocery coupon savings. So press 1 now to speak to an enrollment specialist NOW!

40. The use of a prerecorded message is a consistent with the use of an Automatic Telephone Dialing System ("ATDS"), as it would be illogical to manually call numbers only to then play a prerecorded message.

41. The Caller ID Number on these calls came from a (211) or (121) area code. For instance, the caller ID would display 211-625-835.

42. (211) is an emergency services area code. (121) is an invalid area code.

43. The Caller ID Number would also usually be missing a digit, making the caller ID only 9 digits in length and thus further invalid.

44. All these facts are also consistent with the use of an ATDS, as it takes computerized dialing software to manipulate a Caller ID.

45. The company was not identified in the prerecorded message, so the Plaintiff responded by pressing "1" to speak with a live individual.

46. The live individual identified his company as "Medical First Alarm."

7

47. "Medical First Alarm" does not appear to be a registered company or fictitious name in any state or jurisdiction.

48. To secure the real company name, the Plaintiff provided his credit card information during the call.

49. The Plaintiff's purchase identified Medical Guardian LLC as the merchant.

50. The Plaintiff's credit card company provided the following information about the transaction:

Medical Guardian LLC
Contact Telephone: 800-313-1191; 215-977-8000
City and ZIP Code: Philadelphia, PA 19103
Merchant Website: https://www.medicalguardian.com/

51. This information exactly matches the information on Medical Guardian's contact us page on their website, https://www.medicalguardian.com/contact, archived at https://archive.is/xDF8g.

52. Shortly thereafter, Plaintiff received the medical alert device he had ordered. The package return address indicated Medical Guardian at 109 Rogers Road, Wilmington, DE 19801. Upon information and belief, this is Medical Guardian's warehouse and distribution facility. Moreover, the contents of the package indicated that it came from Medical Guardian.

53. During the course of discovery, it has been revealed that MLA International made the calls at issue.

54. Mr. Ayala made the automated calls for MLA International. He either physically programmed the automatic dialer to dial them or instructed others to do the same.

55. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded, as well as being charged for

8

the calls. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

## Medical Guardian's Liability

56. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

57. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

58. In fact, the Federal Communication Commission has instructed that sellers such as Medical Guardian may not avoid liability by outsourcing telemarketing to third parties such as MLA International:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6588, ¶ 37 (2013) ("May 2013 FCC Ruling") (internal citations omitted).

59. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

60. Medical Guardian is liable for the calls initiated by MLA International through its call center operator Joe Ayala.

61. Medical Guardian hired MLA International to sell its services using telemarketing calls.

62. In fact, MLA International can bind Medical Guardian in contract, as evidenced by the charges and device Plaintiff received from Medical Guardian, a hallmark of agency.

63. Medical Guardian knew (or reasonably should have known) that MLA International was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

64. Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

65. In fact, Medical Guardian has been named in multiple lawsuits for the calling conduct of its third-party call centers.

---

[1] *May 2013 FCC Ruling*, 28 FCC Rcd. at 6574, ¶ 1.

66. Medical Guardian also controls the calling conduct of its third-party call centers by:

    a. Instructing them on the amount of leads they will accept;

    b. Dictating the specific terms of the products they can offer;

    c. Prohibiting them from calling certain numbers; and

    d. Instructing them in the methods used to make the calls, including directing the use of an automated telephone dialing system and an artificial or prerecorded voice.

67. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships ... through discovery, if they are not independently privy to such information." *Id.* at 6592-593, ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593, ¶ 46.

## Class Action Allegations

68. As authorized by Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit on behalf of other persons or entities throughout the United States.

69. The proposed classes are tentatively defined as:

### CLASS 1

All persons within the United States: (a) to whom the Defendants, and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Medical Guardian's products or services; (c) to their residential telephone number, cellular telephone number, or a number for which they are charged for the call; (d) using an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint through the date of class certification.

11

CLASS 2

All natural persons within the United States: (a) to whom the Defendants, and/or a third party acting on their behalf, made two or more calls in a twelve-month period; (b) promoting Medical Guardian products or services; (c) using a prerecorded voice that did not identify the company that was calling, or whose goods or services were being promoted (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

70. The Plaintiff is a member of the classes.

71. Excluded from the classes are the Defendants, any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of the judge's staff and immediate family.

72. Class members are identifiable through phone records and phone number databases that will be obtained through discovery.

73. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

74. There are questions of law and fact common to Plaintiff and the proposed classes, including:

    a. Whether the Defendants were properly identified in the prerecorded message they sent;

    b. Whether the Defendants placed telemarketing calls without obtaining the recipients' valid prior express written consent;

    c. Whether the Defendants' TCPA violations were negligent, willful, or knowing; and

    d. Whether the Plaintiff and the class members are entitled to statutory damages because of the Defendants' actions.

75. Plaintiff's claims are based on the same facts and legal theories as class members and therefore are typical of the class members' claims.

76. Plaintiff is an adequate representative of the classes because his interests do not conflict with the classes' interests, he will fairly and adequately protect the class's interests, and he is represented by counsel skilled and experienced in litigating TCPA class actions.

77. The Defendants' actions are applicable to the classes and to Plaintiff.

78. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records and databases maintained by Defendants and others.

79. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case given the small recoveries available through individual actions.

## Legal Claims
### Count One:
### Violations of the TCPA, 47 U.S.C. § 227(b)

80. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

81. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with a prerecorded message to the residential telephone line of the Plaintiff.

88. Defendants failed to identify themselves in the prerecorded message sent to the Plaintiff and the putative classes.

89. The Defendants' violations were willful and/or knowing.

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed classes;

B. Appointment of Plaintiff as representative of the classes;

C. Appointment of the undersigned counsel as counsel for the classes;

D. A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA;

E. An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any number using an artificial or prerecorded voice in the future;

F. An award to Plaintiff and the classes of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Plaintiff,
By Counsel,

Dated: November 14, 2019

**/s/ Brian K. Murphy**
Joseph F. Murray (327025)
Brian K. Murphy (*pro hac vice*)
Jonathan P. Misny (*pro hac vice*)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murray@mmmb.com
  murphy@mmmb.com
  misny@mmmb.com

Marc Davies (81789)
1315 Walnut Street, Suite 320
Philadelphia, PA 19107
Telephone: 215.876.7636
E-mail: marc@marcdavieslaw.com

Anthony I. Paronich (*pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
508.221.1510
E-mail: anthony@paronichlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2019, the foregoing document was served on all counsel of record who have entered an appearance via the Court's CM/ECF system.

**/s/ Brian K. Murphy**
Brian K. Murphy